IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| DANIEL TAYLOR, | ) | |
|     Petitioner, | ) | Case No. 7:19cv00703 |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| HAROLD CLARK, | ) | By: Michael F. Urbanski |
|     Respondent. | ) | Chief United States District Judge |

Daniel Taylor, a Virginia inmate proceeding pro se, has filed a petition for a writ of habeas corpus, pursuant to 8 U.S.C. § 2254, challenging his 2005 Rockingham County Circuit Court convictions for burglary, object sexual penetration, assault and battery, and giving a false name to police to avoid arrest, for which he received a total sentence of eighty-five years plus twenty-four months. The respondent has filed a motion to dismiss, alleging that the petition is untimely. After reviewing the record, the court concludes that respondent's motion must be granted, and Taylor's petition must be dismissed as time barred.

I.

On January 18, 2005, a Rockbridge County grand jury indicted Taylor for burglary with intent to commit murder, rape, or robbery, in violation of Virginia Code § 18.2-90; object sexual penetration in violation of Virginia Code § 18.2-67.2; misdemeanor assault and battery in violation of Virginia Code § 18.2-57; and misdemeanor identification fraud in violation of Virginia Code § 18.2-186.3 (B1). His first attorney, Graves, filed a motion for

evaluation of competency to stand trial, which was granted, and a motion to suppress evidence, which was denied. The matter proceeded to trial before a jury on August 8, 2005.[1]

The evidence, in the light most favorable to the Commonwealth, was that the victim, Virginia B-L, awoke one night the previous summer around 2:00 in the morning because her sister yelled for her to wake up, that she thought someone was in the room. She saw a man lying at the foot of her sister's bed, where the victim's daughters were also sleeping. (She, her sister, and her three children shared one bedroom.) She called her daughters to come to her, but they could not come because the man was there. Then she saw him grab her 11-year-old daughter around the waist, and she tried to pull her daughter away from him. Her sister ran out of the room to get help from their cousin's boyfriend, Eduardo, who was asleep in the other bedroom. After pulling three times, she successfully freed her daughter from the man's grip. Then, he turned towards her, grabbed her, and ripped her underwear. As she struggled to get away, she fell from the bed to the floor, and he was on top of her, trying to force his hands between her legs. He was strong and overcame her efforts to get away from him, and he inserted his fingers inside her. By then, Eduardo had come to the room and was trying to pull the intruder off her. Eduardo finally succeeded in getting him off her, and he pushed the intruder towards the stairs. The intruder ran out of the house, and her son called the police. Trial Tr. at 26–36.

The victim testified that the police arrived within three minutes, and she, her children, her sister, and Eduardo went outside to speak with the officers. Her children translated

---

[1] The trial transcript indicates that the trial date was August 9, 2005, but the Sentencing Order reflects a trial date of August 8, 2005.

2

because they spoke English. While describing the assailant to the officer, she saw the same man walking across the street; she recognized his clothing. The officer drove her and the children up to Hardee's to have her get a closer look at him, and she identified him as her attacker. *Id.* at 37–41. The victim's testimony was corroborated by her 11-year-old daughter who had been grabbed by the man. *Id.* at 54–63.

Deputy Christopher Dove, the first to arrive on scene during the early morning hours of August 8, 2004, testified that the victim's son spoke English very well and translated what the she said happened. While they were talking, the boy got very excited and pointed over to the trees across the street. All of them were saying "That's him; that's the man!" Dove got in his police vehicle to follow the man, because the man was just far enough away that he could have fled on foot if he realized the officer was coming. At the parking lot of Hardee's, he detained the man and placed him in cuffs. The man and his clothing matched the description he had been given of the assailant. A backup officer arrived on scene and remained with the suspect while Dove returned to their home to drive them up to the scene for identification. After the victim and her children made a positive identification, he placed the man under arrest and turned him over to Investigator Spiggle for transport to the jail. Dove then took the victim to the hospital for examination by a SANE nurse, and he took her torn underwear as evidence. *Id.* at 64–69.

Vickie Carruthers, SANE nurse, testified about her examination of the victim and identified photographs of the scratches on her inner thighs. The internal genitalia appeared normal, with no visible injuries. Because she alleged only digital penetration, no DNA swab was taken. *Id.* at 73–81.

Investigator Spiggle interviewed and took pictures of the subject at the police station, and he provided the name of Daniel Lawrence. Spiggle observed that the suspect's fingernails were long. He said he did not know his social security number. He gave "apartment J in Harrisonburg" as his address and said he worked as a landscaper. He said his reason for being in the neighborhood that night was to check about a job. He then requested an attorney. Spiggle suspected that the name given was not his real name, so arrest fingerprints were run through VCIN. By the next morning, he knew the man's name was Daniel Taylor. *Id.* at 82–90.

The defense offered no evidence. After closing arguments and deliberations, the jury returned a verdict of guilty on all four counts. Other than Taylor's prior record, neither side introduced any evidence at the sentencing portion of the trial. The jury recommended a verdict of twenty years for burglary, sixty-five years for sexual object penetration, and twelve months on each of the misdemeanors. The trial court then ordered a presentence report and scheduled the matter for sentencing.

No longer satisfied with his attorney, Taylor wrote a letter to the trial judge with a laundry list of complaints. The judge responded on September 26, 2005, that the proper venue for those complaints was with the Virginia State Bar. Graves filed a motion to withdraw on September 30, which the court granted on October 4, and a new attorney, Bradley, was appointed for Taylor on October 7, 2005, to represent him at the sentencing hearing. CCR[2] at 124–134.

---

[2] References herein to the Circuit Court record will be abbreviated "CCR;" references to the Court of Appeals record will be abbreviated "VCOAR," and references to the Supreme Court of Virginia habeas record will be abbreviated "Habeas R."

Following preparation of the presentencing report, the court held Taylor's sentencing hearing on November 21, 2005, and imposed the full sentence recommended by the jury. The final order was entered December 1, 2005. *Id.* at 140–42. Bradley filed a notice of appeal on Taylor's behalf, in which he affirmed that a copy of the notice had been mailed to counsel of record and to the court of appeals on December 30, 2005. The trial court's date stamp reflects that it was filed in the Circuit Court on January 5, 2006. The Court of Appeals of Virginia wrote Taylor on March 13, 2006, requesting documentation pursuant to Rule 5A:3(d) of the Rules of the Supreme Court of Virginia, of when the notice was placed in the institutional mail, as the postmark on the envelope was past the deadline. (VCOAR at 2.) Taylor responded that the court would need to check with his attorney, because his attorney handled the filing of the appeal. *Id.* at 3. On May 8, 2006, the court of appeals dismissed the appeal because the notice of appeal was not timely filed. *Id.* at 5.

Twelve years later to the date, May 8, 2018, Taylor filed a state habeas corpus petition in the Supreme Court of Virginia, apparently alleging ineffective assistance of counsel and numerous other alleged errors during his trial. (Habeas R. at 1.) The court dismissed this petition as untimely by order entered July 26, 2008. *Id.* at 79. Taylor requested rehearing, which was denied on October 4, 2018. *Id.* at 81.

Taylor filed the current § 2254 petition on October 18, 2019, apparently alleging ineffective assistance of counsel and other errors during his trial. Because the petition is untimely, there is no need to catalog his claims.

## II.

Under 28 U.S.C. § 2244(d)(1), a petitioner has one year in which to file a federal habeas corpus petition. This statute of limitations runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Subsection A is the only one applicable to Taylor's case, as he has not alleged any facts to support application of subsections B, C, or D. Therefore, one must determine the date on which his judgment became final to determine when the one-year statute of limitations began running—and when it ended. The final order was entered by the trial court on December 1, 2005. He sought direct review in the Court of Appeals of Virginia, but that court dismissed the appeal as untimely filed. Under Virginia's statutes and rules of court, an appeal must be commenced by filing a notice of appeal with the clerk of the trial court within thirty days from entry of the final order. Va. Code §§ 8.01-675.3 and 17.1-408; Rule 5A:6 (a) of the Rules of the Supreme Court of Virginia. Thirty days from December 1

would be December 31, which in 2005, was a Saturday, making the notice due the next business day, January 2, 2006. However, the trial court did not receive the notice until January 5, 2006. The notice was mailed to the court. To be considered timely when filed by mail, Virginia Code § 8.01-675.3 requires that it be mailed by registered or certified mail and that the postal receipt showing mailing within the time limit be available upon request by the clerk. Rule 5A:6(d) is more lenient for pro se appellants, but Taylor was not pro se. The notice of appeal was filed by his attorney, Bradley, and Taylor confirmed this in his letter response to the March 13, 2006, letter from the court of appeals. The notice was not filed by registered or certified mail, the envelope's postmark was later than the due date, and the court did not receive the notice until three days after it was due. Under Virginia law, this renders the appeal untimely, and the judgment became final when the appeal was not perfected on or before January 2, 2006. Greer v. Commonwealth, 796 S.E.2d 422, 67 Va. App. 324 (2017). The one-year statute of limitations ran from that date and expired on January 2, 2007. His petition filed October 18, 2019, is nearly thirteen years too late.

Three possible ways exist for a petitioner to avoid the harsh effect of the statute of limitations: Statutory tolling, equitable tolling, or actual innocence. As discussed more fully below, none of these will save Taylor's untimely federal petition in this case.

**A. Statutory Tolling**

Section 2244(d)(2) tolls the statute of limitations during the time in which "a properly filed application for State post-conviction or other collateral review . . . is pending." A state habeas petition does not delay the starting of the limitation period; rather, the period starts running when the state judgment becomes final, but the clock is stopped when a state habeas

proceeding is properly filed. Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000). If the statute has already fully run before the state action is filed, the state collateral proceeding can no longer toll the federal filing period, as there is nothing left to toll; the state action does not "revive" the one-year limitation period. Wahl v. Kholi, 562 U.S. 545, 547 (2011).

Taylor's state habeas was not filed until May 8, 2018, more than eleven years after the statute had run on Taylor's federal habeas claim, so if the state habeas had been properly filed, it still could not have tolled the federal statute, because the federal statute had expired long before. Further, Taylor's state habeas was not "properly filed." An untimely petition filed in state court is not "properly filed." Artuz v. Bennett, 531 U.S. 4, 11 (2000). If the state petition is considered untimely under state law, "'that is the end of the matter' for purposes of § 2244(d)(2)." Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) (internal citation omitted). For both reasons, then, statutory tolling does not save Taylor's untimely petition.

B. **Equitable Tolling**

The United States Supreme Court has recognized a narrow exception for equitable tolling if the petitioner has pursued his rights diligently and some extraordinary circumstances prevented his timely filing. Holland v. Florida, 560 U.S. 631, 636, 649 (2010). Taylor has not been diligent in pursuing his rights, nor has he shown any extraordinary circumstances that prevented him from timely filing his federal habeas petition.

1. **Lack of Diligence**

Diligence implies constant, timely effort to accomplish something, not intermittent efforts. Review of Taylor's filings in this court and of the complete set of state court records show that Taylor knew by June 5, 2006, that his state appeal had been dismissed. On that

8

date, he wrote a letter to the trial court asking to "have a motion granted" to produce documents to him from the case that his attorney had failed to give him; in the letter, he stated that "The appeal has already been denied." The original letter is in the Circuit Court file but has no page number, because it was not part of the record forwarded to the Court of Appeals as it was not received until after the appeal had been dismissed. As Taylor advised in one of his supplemental filings with this court, the trial judge denied his motion. (ECF No. 9.) Taylor sent the same letter to the court on June 13, 2006, which the court again denied. He sent one more letter, explicitly identifying the documents he wanted as trial transcripts, discovery, and the police report, and he wanted the judge to make his first attorney provide the documents to him and to Bradley. The court denied the motion on July 7, 2006, explaining that it no longer had jurisdiction to order anyone to produce anything in the case.

The Circuit Court file contains one last letter from Taylor, date stamped received on July 10, 2006, indicating that he had not heard from the attorney handling his appeal in five months and he needed help completing a form that the court had previously provided to him. The file also contained a partially completed state habeas petition, with his name, date of conviction, charges, and sentence, but nothing else filled out. In July 2006, Taylor still had over five months in which to file the federal petition that he did not file for another twelve years. Under the state's two-year habeas statute of limitations, he had until December 1, 2007 to file a state habeas petition and to request a delayed appeal because of his attorney's failure to file the notice of appeal timely. Yet, here is no evidence of any other correspondence from Taylor to any court about the case until November 2013, over seven

9

years later, when he apparently wrote to the Mid-Atlantic Innocence Project seeking help. By letter of November 25, 2013, a project staff member acknowledged receipt of his letter and said they would investigate to see if they were able to handle his case. The letter also told him to be sure and file any habeas by the deadline and not to wait on them for an answer. (Habeas R. at 45–46.) But there is no correspondence or pleadings filed with any court between November 2013 and March 2016, when the Innocence Project wrote to advise that they were unable to take his case. *Id.* at 52.

The seven years between July 2006 and November 2013, and the two-and-a-half years from November 2013 to March 2016, with absolutely no communication from Taylor to the courts, is not diligence in pursuing one's rights.

**2. Lack of Extraordinary Circumstances**

The reasons Taylor gives for his extremely untimely petition are: (1) inability to get case file, discovery, and transcripts from his attorney or the court; (2) he did not understand the rules of court and statutes and did not have access to jailhouse lawyers or paralegals; (3) he had no access to a computer; and (4) the institution made it difficult to get the cases he needed from the library. None of these constitute the extraordinary circumstances contemplated by the Court in Holland. See United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004) (holding that ignorance of the law is not a basis for equitable tolling, even if the litigant is pro se); Garvin v. Eagleton, No. 8:12-1165-JMC, 2013 WL 3821482, at *13 (D.S.C. July 23, 2013) (holding that alleged inadequacies of prison law libraries and lack of access to libraries and computers do not toll the statute of limitations).

To file his federal petition, Taylor did not need to attach transcripts or legal cases. He did not need to cite any cases. He just needed to state the facts of what happened in his trial that violated his rights. He could have complained of his attorney's failure to subpoena witnesses, failure to give him file materials, failure to file his appeal properly, and any number of other alleged failures, just as he has done now. He did not need to discuss other cases, just his own. He was present at his own trial, and if there were witnesses that he wanted to testify who were not present, he knew that in 2005. He did not need to wait twelve years to file a habeas petition alleging that his attorney did not subpoena his witnesses to court.

Because Taylor has not alleged extraordinary circumstances, nor has he been diligent in pursuing his rights, equitable tolling does not save his untimely petition.

### 3. "Actual Innocence"

In balancing the "societal interests in finality, comity, and conservation of scarce judicial resources with the individual interest in justice that arises in the extraordinary case," the Court has recognized a "miscarriage of justice exception" to the statute of limitations when a litigant presents new evidence showing that, absent constitutional error, "no reasonable juror would have convicted" the defendant. McQuiggin v. Perkins, 569 U.S. 383, 393–95 (2013). A credible claim of actual innocence must be supported by new reliable evidence, such as exculpatory scientific evidence, critical physical evidence, or trustworthy eyewitness accounts. Schlup v. Delo, 513 U.S. 298, 324 (1995). Although Taylor cites McQuiggin and claims actual innocence, he has not alleged nor offered any new evidence to support this claim. Accordingly, this exception does not help him, either.

11

## III.

Because Taylor's petition is more than a decade past the deadline, and none of the exceptions to the statute of limitations applies to this case, the court will grant the respondent's motion to dismiss.

**ENTER:** This 3rd day of February, 2021.

Michael F. Urbanski
Chief U.S. District Judge
2021.02.03 10:53:52
-05'00'

_____

Chief United States District Judge